

## UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA TAMPA DIVISION

2017 JUL 20 PM 3: 42

CLERK, US DISTRICT COURT
MIDDLE DISTRICT FLORIDA
TAMPA, FLORIDA

AMERICAN CONTRACTORS
INDEMNITY COMPANY

     Plaintiff,

Vs.

MIDSTATE CONTRACTORS, INC.;
a Florida Corporation;
ROBERT GONZALEZ, Individually
and UNKNOWN EXECUTOR
OF ESTATE OF STACEY
GONZALEZ, Individually;

     Defendants.

Civil Case no.:

8:17 cv 1355 T 23 JSS

_____/

### AMERICAN CONTRACTORS INDEMNITY COMPANY'S COMPLAINT

COMES NOW American Contractors Indemnity Company ("ACIC" or "Plaintiff"), by and through its undersigned counsel, and files this its Complaint for Breach of Contract and Indemnification against Midstate Contractors, Inc. ("Midstate"), as corporate indemnitor, and Robert Gonzalez, individually, and the Unknown Executor of the Estate of Stacey Gonzalez, (collectively referred to as the "Defendants"), and in support thereof shows the Court as follows:

### NATURE OF THE ACTION

1.

1



In this action, ACIC files alleges breach of contract, specific performance, and common law indemnity to recover its losses arising out of a performance bond issued on behalf of Midstate, a general contractor.

## PARTIES AND JURISDICTION

### 1.

Plaintiff is a corporation with its principal place of business in California, and incorporated in California.  Plaintiff is licensed to do business in Florida.

### 2.

Defendant Midstate maintains a registered office in Pasco County, Florida; is incorporated in Florida; and maintains its principal place of business in Florida. Midstate may be served via its registered agent Shari Mormon, at 1324 Seven Springs Blvd. #165, New Port Richey, Florida 34655.

### 3.

Defendant Robert Gonzalez is a citizen of the state of Florida and resides in Florida and is subject to the jurisdiction of this court.

### 4.

Defendant Unknown Executor of the Estate of Stacey Gonzalez is a citizen of the state of Florida and resides in Florida and is subject to the jurisdiction of this court.

### 5.

This Complaint for Breach of Contract and Indemnification is based upon an agreement of indemnity and losses suffered in connection with payment bond no. 1001054404 naming defendant Midstate as principal.

6.

The Defendants are residents and citizens of the State of Florida, and the defendant corporation maintains its principal place of business in Florida, and is incorporated in Florida.

7.

Jurisdiction is proper in this Court.   This Court possesses original jurisdiction over ACIC's Complaint for Breach of Contract and Indemnification pursuant to 28 U.S.C. §1332(a) because the matter in controversy exceeds the sum or value of $75,000.00 exclusive of interest and costs and the matter in controversy is between citizens of different states.

7.

Venue is proper in this Court pursuant to 28 U.S.C. §90(a) and 28 U.S.C. §1391(b)(1) because Defendants reside and are domiciled within the Middle District of Florida.

**BACKGROUND**

8.

On or about October 13, 2015, Defendant Midstate executed a General Agreement of Indemnity ("Indemnity Agreement") for the benefit of ACIC (sometimes referred to as "Surety"). Additional signatories to the Indemnity Agreement were Stacey Gonzalez, individually, and Robert Gonzalez, individually. A true and correct copy of the Indemnity Agreement is attached hereto as Exhibit "1".

9.

Under the provisions of Paragraph III of the Indemnity Agreement, the Defendants, jointly and severally, agreed to:

> Indemnify, keep indemnified, reimburse and save and hold the Surety harmless from and against any and all demands, liabilities, losses, costs, damages, attorneys' fees and expenses . . . of any kind . . . which the Surety may sustain or incur or which arise by reason of or in any manner in consequence of, no matter how remotely, and one or more of the following: the execution or procurement by the Surety of any Bond . . . ."

10.

Further, under the provisions of paragraph XI(A) of Indemnity Agreement the Defendants jointly and severally agreed that:

> "[i]f any claim is made against the Surety by any subcontractor, supplier, obligee or other person under any Bond, whether such event or claim shall be disputed . . . Principal and Indemnitor shall immediately deposit with the Surety money, securities, or other collateral in any amount, value, form, and source as may be designated by and acceptable to the Surety in its sole and absolute discretion."

4

11.

In partial consideration for, and in reliance upon Defendants' execution of the aforementioned Indemnity Agreement, ACIC as surety did issue the following Payment and Performance Bonds ("Bonds") identified by project name ("Project") and obligee:

| Project Name | Obligee | Bond No. | Penal Limit |
|---|---|---|---|
| HART – VC – 000520 3rd Floor Ybor Renovations | Hillsborough Area Regional Transit Authority ("HART") | 1001054404 | $513,467.93 |

A true and accurate copy of the above-referenced Payment and Performance Bonds are attached hereto as Exhibit "2."

12.

ACIC has received claims on the above-referenced Bonds.  Two suppliers and/or subcontractors to Midstate demanded payment from ACIC after they did not receive payment for labor/materials supplied to the Project.  As such, ACIC has paid valid claims on the above-referenced Bonds.  To date, ACIC has paid claims totaling $136,360.00 and incurred expenses of approximately $2,500.00.

13.

Pursuant to the Indemnity Agreement, ACIC has demanded and hereby demands that the Defendants indemnify ACIC under the terms of the Indemnity Agreement and to immediately deposit with ACIC collateral security for any

potential exposure. The Defendants have failed and refused to indemnify or to deposit collateral security as required under the Indemnity Agreement. A true and accurate copy of the demand letter sent by ACIC to the Defendants is attached as Exhibit 3.

14.

In addition to the claims paid (as described in paragraph 12 above), ACIC has incurred and will continue to incur in the future substantial costs and expenses, including, without limitation, attorney's fees, accountant's fees, and consulting fees in investigating and resolving claims made under the Bonds issued by ACIC on Midstate's behalf. Pursuant to the terms of the Indemnity Agreement, the Defendants are responsible, jointly and severally for payment of these costs and expenses.

**COUNT I—SPECIFIC PERFORMANCE OF INDEMNITY AGREEMENT**

15.

This is an action for specific performance seeking equitable relief.

16.

Defendant Midstate executed the Indemnity Agreement for the benefit of ACIC as an inducement for ACIC to issue the above-referenced bond. Stacey Gonzalez signed the Indemnity Agreement in her capacity as President of

6

Midstate, and in her individual capacity, and Robert Gonzalez signed the Indemnity Agreement in her individual capacity only. See Exhibit 1.

17.

In addition to a contractual agreement to indemnify ACIC for all liabilities, costs and expenses arising by virtue of the Bonds, the Defendants further agreed to post collateral security with ACIC. Specifically, the Defendants jointly and severally agreed that:

> shall immediately deposit with the Surety money, securities, or other collateral in any amount, value, form, and source as may be designated by and acceptable to the Surety in its sole and absolute discretion.

> See Exhibit 1 at ¶XI(A).

18.

Claims have been asserted against the Bonds. These claims have led to the losses described in paragraph 12 above. ACIC has incurred and continues to incur losses on the Bonds in the form of claims both asserted and paid.

19.

The Defendants have failed and refused to honor their obligations under the Indemnity Agreement, including but not limited to their obligation to post satisfactory collateral upon demand by ACIC.

20.

To date, ACIC has incurred expenses and fees and expects in the future to incur additional charges, costs and fees under the Bonds for which it is entitled to indemnification and reimbursement under the Indemnity Agreement.

21.

Under the Indemnity Agreement, the Defendants, jointly and severally, are liable to ACIC for all losses, costs, fees and expenses, including attorney's fees, which have been incurred and/or will be incurred by in the future in connection with the Indemnity Agreement, the Bonds, and the Project.

22.

ACIC is fearful and apprehensive that the Defendants are or will become financially unable to pay any amounts that due and owing to claims made against the Bonds for which ACIC may be liable, or that the Defendants, based on upon their refusal to properly utilize and/or distribute the available contract balances for the benefit of ACIC in accordance with the Indemnity Agreement, will sell, transfer, dispose of, lien, or secure or otherwise divert or conceal such assets.

23.

ACIC is entitled to specific performance of all its rights and the Defendants' obligations under the Indemnity Agreement including collateral deposit requirements and the Defendants, jointly and severally, are required to specifically

perform all such obligations.  Pursuant to the Indemnity Agreement, ACIC has and hereby demands such specific performance by Defendants.

## COUNT II—BREACH OF INDEMNITY AGREEMENT

### 24.

This is an action for damages seeking relief at law under the Indemnity Agreement.

### 25.

There exists a valid and enforceable contract between ACIC and the Defendants, the terms of which are memorialized in the Indemnity Agreement.

### 26.

Defendant Midstate executed the Indemnity Agreement for the benefit of ACIC as an inducement for ACIC to issue the above-referenced bond.  Stacey Gonzalez signed the Indemnity Agreement in her capacity as President of Midstate, and in her individual capacity, and Robert Gonzalez signed the Indemnity Agreement in her individual capacity only.  See Exhibit 1.

### 27.

As part of the Defendants' contractual obligations arising out of the Indemnity Agreement, the Defendants agreed to indemnify ACIC for all liabilities, costs and expenses arising by virtue of the Bonds indemnify ACIC for all

liabilities, costs and expenses arising by virtue of the Bonds; specifically, Defendants agreed to:

> Indemnify, keep indemnified, reimburse and save and hold the Surety harmless from and against any and all demands, liabilities, losses, costs, damages, attorneys' fees and expenses . . . of any kind . . . which the Surety may sustain or incur or which arise by reason of or in any manner in consequence of, no matter how remotely, and one or more of the following: the execution or procurement by the Surety of any Bond . . . ."

See Exhibit 1 at ¶III.

28.

Pursuant to the Indemnity Agreement, ACIC demanded and hereby demands indemnification and collateral security pursuant to the terms of the Indemnity Agreement from the Defendants, jointly and severally for all sums, including costs and attorney's fees, expended or to be expended by ACIC under the Bonds as a result of Midstate's actual and/or alleged default of its obligations.

29.

ACIC has paid valid claims on the above-referenced Bonds. To date, ACIC has paid claims totaling $136,300.00 and incurred expenses of approximately $2,500.00.

30.

The Defendants have failed and refused to honor their obligations under the Indemnity Agreement to make payment pursuant to the Indemnity Agreement, and

to protect ACIC from liability and loss in connection with the issuance of the aforementioned Bonds.

31.

The Defendants' failure to honor their obligations under the Indemnity Agreement constitutes a breach of the Indemnity Agreement and as a direct proximate result of said breach, ACIC has incurred damages and liability.

32.

All conditions precedent to ACIC's right to indemnification have been performed, waived, satisfied or otherwise excused by the Defendants. Due to Defendants' breach, ACIC is entitled to damages.

## COUNT III - COMMON LAW INDEMNITY

33.

This is an action for damages seeking relief at common law and in equity.

34.

There exists a special relationship between ACIC, as surety, and Midstate, as principal, arising out of the parties' business dealings related to the Project and Bonds, such that it is appropriate for common law indemnification to exist.

35.

ACIC has fully and completely performance any and all obligations arising out of the parties' business dealings related to the project and the Bonds, and is

wholly without fault for any losses, expenses and/or liabilities that have or may ultimately arise.

36.

ACIC has and continues to incur losses and loss adjustment expenses as a result of the special relationship between ACIC and its principal, Midstate. Additional indebtedness arising out of the special relationship will continue to accrue, including but not limited to the expenditure of funds paid in resolution of all claims against the Bond.

37.

Any and all losses and expenses incurred to date as a result of the special relationship between ACIC and Midstate, as well as any liability that may be imposed in ACIC as a result of any claims against the Bond, arise out of the vicarious, construction, derivative or technical liability imposed on ACIC as a result of the fault and/or wrongdoing of Midstate.

38.

At common law, Midstate is responsible to ACIC for any and all losses and expenses incurred or to be incurred.

WHEREFORE, ACIC prays that it has the following relief:

(a) That, as to Count I, Defendants, jointly and severally, be ordered to specifically perform the following pursuant to the Indemnity Agreement:

12

    (i)    Comply with the collateral deposit requirement of the Indemnity Agreement; and

    (ii)    Indemnify ACIC;

(b)    That, as to Counts II, and III this Court enter judgment against Defendants, jointly and severally, in favor of ACIC in an amount to be proven at trial, together with interest, costs, expenses and attorneys' fees;

(c)    That ACIC be awarded all costs of this action, including attorneys' fees and such other relief as the Court may deem just and proper.

Respectfully submitted, this 12th day of July 2017.

THOMPSON & SLAGLE, LLC

Joseph H. Wolenski
Fla. Bar No:  42948
Attorney for Plaintiff

6470 East Johns Crossing, Suite 100
Johns Creek, Georgia 30097
T:  (770) 662-5999
jwolenski@tandslawfirm.com

 **HCC**

HCC Surety Group®
601 South Figueroa Street, Suite 1600
Los Angeles, California 90017-5721

## General Indemnity Agreement

| IMPORTANT NOTICE |
| --- |
| THIS INSTRUMENT CONTAINS A WAIVER OF THE RIGHT TO A TRIAL BY JURY. |

THIS GENERAL INDEMNITY AGREEMENT (hereinafter, the "Agreement") is made and entered into this __12th__

day of __October__ , __2015__ by and among the Principal (as hereinafter defined):

__Midstate Contractors, Inc.__

*(Insert full name of the Principal(s))*

and Indemnitor (as hereinafter defined):

__Stacey Gonzalez, Robert Gonzalez__

*(Insert full name of the Indemnitor(s), if any)*

jointly, severally, collectively and individually, and is executed for the continuing benefit of the Surety (as hereinafter defined).

NOW THEREFORE, in consideration of the premises set forth herein, and other good and valuable consideration, receipt and sufficiency of which is hereby expressly acknowledged by the Principal and Indemnitor, the Principal and Indemnitor, for themselves, their affiliates, subsidiaries, divisions, successors, assigns, executors and administrators hereby covenant, agree and bind themselves, jointly and severally, to the Surety as follows:

## I. DEFINITIONS

The terms listed below shall have the following meanings for purposes of this Agreement:

A.  "Bond" or "Bonds" shall mean any contractual obligation, undertaking, contract of suretyship, guaranty or indemnity, undertaken by the Surety, issued on behalf of, or procured for the Principal by the Surety, before, on, or after the date of this Agreement, and any renewal, modification, extension or substitution of said obligation, undertaking, contract of suretyship, guaranty or indemnity.

B.  "Contract" shall mean any agreement between or among the Principal and any one or more parties other than the Surety, together with all associated documents, including but not limited to general and special conditions, specifications, drawings, schedules and/or CPMs, whether or not the Surety has executed or procured the execution of any Bond in connection therewith.

C.  "Bonded Contract" shall mean any Contract in connection with which a Bond shall have been issued or procured.

D.  "Event of Default" shall mean any one or more of the following:

1.  Any abandonment, forfeiture, breach, failure, refusal or inability of any Principal, whether actual or alleged, to perform any Contract, or any obligation contained therein;

2.  Any abandonment, forfeiture, breach, failure, refusal or inability of any Principal, whether actual or alleged, to perform any obligation contained in any Bond, and/or to perform or comply with any and all of the terms, covenants, and conditions of this Agreement;

3.  Any abandonment, forfeiture, breach, failure, refusal or inability of the Principal or Indemnitor, whether actual or alleged, to perform any contract or agreement, other than this Agreement, to which the Surety and any Principal or Indemnitor shall be parties, including but not limited to, any security agreement, mortgage, deed of trust or other document or instrument delivered to the Surety for the purpose of providing collateral security of the Principal or Indemnitor's obligations hereunder, or the non-renewal or failure to honor, by any issuer or bank, any letter of credit provided to or for the benefit of the Surety;

4.  A determination by the Surety, in its sole and absolute discretion, that the Principal's successful bid on a Bonded Contract was equal to or more than ten percent (10%) lower than the bid of either or both of the next two (2) lowest bidders;

5.  The declaration by any Bond obligee or project owner that any Principal is in default under any Contract, irrespective of whether or not such Principal is actually in default under such Contract, or the acknowledgement by such Principal of its default under such Contract, it being agreed that it shall be no defense to the enforcement of the terms of this Agreement by the Surety that any Principal or Indemnitor asserts that it or they are not in default under any Contract as alleged;

6.  Any failure of any Principal at any time to provide adequate manpower, staffing, supervision, or material in the performance of work called for under any Contract as alleged by any obligee, or as determined by the Surety in its sole and absolute discretion;

7.  Any failure of any Principal to meet or maintain any schedule or CPM approved by any obligee, or any of its representatives, as alleged by any obligee or as determined by the Surety in its sole and absolute discretion;



RECEIVED

OCT 1 3 2015

EXHIBIT

1

8. Any delay, failure, refusal or inability of any Principal to pay claims, bills or any other indebtedness incurred in, or in connection with, the performance of any Contract, in whole or in part, when such obligations come due;

9. The receipt or notice, whether direct or indirect, of a claim or potential claim, or the payment by the Surety of any claim under any Bond;

10. Any suit or other judicial or quasi-judicial proceeding, including mediation, arbitration, or other form of alternative dispute resolution being commenced against the Surety as it relates to any Bond, Contract, Principal, or Indemnitor;

11. Any failure or refusal by any Principal or Indemnitor to perform any obligation under any provision or term of this Agreement, as determined by the Surety in its sole and absolute discretion;

12. Any failure by any Principal or Indemnitor to pay or discharge, when due or as demanded by the Surety, any indebtedness of any Principal to the Surety or to any obligee, or to any subcontractor, supplier, laborer or materialman or any other claimant on any Bonded Contract or under any Bond;

13. Receipt of any information by the Surety or the existence of any facts relating to the financial condition of any Principal or Indemnitor which causes the Surety, in its sole and absolute discretion, to believe that such Principal or Indemnitor may be unable to perform or meet any of their obligations under this Agreement;

14. Any failure by any Principal to notify the Surety, in writing, within five (5) days of such Principal's receipt of a claim, cure, show cause or other notice from any obligee that any Principal has defaulted or has failed or refused to perform any Contract obligation, or must cure its performance or in any manner show cause as to why any Principal should not be terminated by the obligee for default;

15. Any failure by any Principal to notify the Surety, in writing, within ten (10) calendar days, of any increase or increases in the dollar amount or value of any Bonded Contract, by modification, change order, directive, or series of modifications, change orders or directives, or otherwise which increases the dollar amount, value or contract price of such Bonded Contract by more than twenty-five percent (25%);

16. Any representation or warranty made by any Principal or Indemnitor to the Surety including, without limitation, any representation as to the financial condition of any Principal or Indemnitor, which is found, at any time, to be untrue, inaccurate or incomplete;

17. The submission to the Surety or the Surety's agent by any Principal or Indemnitor of any financial information which is deemed by the Surety, at any time, to be or to have been, materially false, incomplete, or misleading;

18. The submission to the Surety or the Surety's agent by any Principal or Indemnitor of any information used by the Surety in the process of underwriting any Bond which is determined by the Surety, at any time, to be or to have been, materially false, incomplete, or misleading;

19. Any diversion of any Contract funds by any Principal from any Bonded Contract to make payment of obligations on any other Bonded Contract, any bonded Contract, or unbonded Contract, or any other obligations of any kind, prior to obtaining the complete discharge of the Surety on the Bonded Contract from which funds have been diverted;

20. Any pledge or assignment by the Principal of any contract balance or contract receivable from a Bonded Contract to a third party, including a lender or factor, without the prior express written authority of the Surety;

21. The commencement of any composition, insolvency, bankruptcy, receivership, trusteeship or other such proceeding of which any Principal or Indemnitor becomes a subject, or any assignment for the benefit of creditors by any Principal or Indemnitor;

22. The insolvency of any Principal or Indemnitor;

23. Any individual Principal's death, adjudication of mental incompetence or disability, conviction of a felony, becoming a fugitive from justice or inability to be located after reasonable efforts;

24. Any material change in the character, identity, control, composition, beneficial ownership or legal status or existence of any entity which shall be a Principal or Indemnitor, it being understood that a change in five percent (5%) or more of the ownership or controlling interests in any such entity shall be deemed a material change;

25. The initiation of any proceeding which materially deprives any Principal of the use of such Principal's plant, facilities, equipment, machinery, tools, supplies or materials;

26. The establishment by the Surety, in its sole and absolute discretion, of any reserve in any amount in connection with any Bond;

27. The failure of any Principal or Indemnitor to pay any premium to the Surety, including but not limited to additional premiums based on an overrun or increase in contract price, or to any agent of the Surety, when due or as demanded thereafter by the Surety;

28. In the event that any Principal or Indemnitor provides or pledges any property of any type to the Surety as collateral security for, or as a condition precedent to the issuance of Bonds, a decline or deterioration in the value of such property equal to or exceeding twenty percent (20%), as determined by the Surety in its sole and absolute discretion.

E. "Good Faith" with respect to an act, omission or exercise of discretion by the Surety shall mean honesty in fact and the absence of willful misfeasance or malfeasance. Neither negligence nor gross negligence shall be deemed to be the absence of good faith.

F. "Indemnitor" shall mean and include any and all Principal(s) as hereinafter defined, and each and every person or entity, separately, and any and all such persons and entities collectively, jointly, severally, and individually who or which execute this Agreement as an Indemnitor, and any and all of its or their parents, affiliates, divisions, subsidiaries, successors, assigns, partners, and/or joint venturers.

G. "Principal" shall mean any and all individuals or entities executing this Agreement as Principal(s) and any and all of its or their parents, affiliates, divisions, subsidiaries, successors, assigns, partners, or joint venturers.

H. "Surety" shall mean American Contractors Indemnity Company, U.S. Specialty Insurance Company, United States Surety Company, Pioneer General Insurance Company, Texas Bonding Company, HCC Insurance Holdings, Inc., HCC Surety Group, their affiliates, divisions, subsidiaries, successors, assigns, co-sureties, reinsurers, fronters, partners and/or joint venturers; and any other person or entity which the Surety may direct, request or procure to act as the Surety or as a Co-Surety on any Bond; and any other person or entity who executes a Bond at the request of the Surety.

## II. INDEMNITOR REPRESENTATIONS AND ADDITIONAL CONSIDERATION

The Indemnitor represents, warrants and guarantees, unconditionally and with the intention that the Surety shall detrimentally rely upon such representations without investigation or verification, as follows:

A. The Indemnitor has read this Agreement carefully, has consulted with an attorney regarding this Agreement or has had an opportunity to consult with an attorney regarding this Agreement and has elected not to do so; and the Indemnitor understands this Agreement and that the Indemnitor is bound to the terms of this Agreement;

B. If a natural person, the Indemnitor is in all ways competent and qualified to enter into this Agreement and does so willingly and without duress, and if the Indemnitor is a legal entity other than a natural person, the person acting on behalf of such Indemnitor is in all ways authorized, qualified and competent to bind the Indemnitor to the terms of this Agreement, and there is no document, or form or formality of expression other than what has been given or provided to the Surety in connection with the execution of this Agreement that is required in order for the Indemnitor to be bound to this Agreement;

C. This Agreement is made and entered into for commercial purposes, and is not in any sense or for any purpose a consumer agreement, and is made or entered into as a result of negotiations, in a free and active market in which the Indemnitor has and has had alternatives;

D. The Indemnitor intends that the Surety shall rely upon the Indemnitor's representations and undertakings as expressed in this Agreement and upon the Indemnitor's credit, including all of the Indemnitor's assets, and that the Surety shall undertake legal or financial risk or forego rights or remedies that might otherwise be available to the Surety based upon such reliance, and such reliance is reasonable;

E. The Indemnitor has a substantial, material and beneficial interest in obtaining one or more Bonds on behalf of the Principal, or in the Surety's forbearance from canceling one or more Bonds, or in the performance and fulfillment of the obligations secured or to be secured by one or more Bonds issued or to be issued, on behalf of the Principal; and

F. The Indemnitor's undertakings by and through this Agreement are supported by additional consideration including but not limited to the following:

   1. The Principal, in the performance of contracts and the fulfillment of obligations generally, whether in its own name solely, or as co-venturer with others, may have previously received one or more Bonds from the Surety, or may desire or be required to give or procure certain Bonds and to renew, maintain, continue or substitute the same from time to time, or require new Bonds with the same or different penalties and conditions, or may desire or request that the Surety refrain from canceling one or more Bonds and the Surety has processed, considered or acted upon a request by the Principal in connection therewith, or the Surety may do so in connection with the execution of this Agreement or hereafter, all in reliance upon the undertakings of the Indemnitor as set forth in this Agreement; and

   2. The Principal or Indemnitor may request the Surety to consider the execution or provision of one or more Bonds on behalf of the Principal; and

   3. The Surety has processed, considered or acted upon a request by the Principal in connection with a Bond, or the Surety may do so in reliance upon the undertakings of the Indemnitor in this Agreement.

## III. INDEMNITY, EXONERATION AND HOLD HARMLESS

The Principal and Indemnitor shall, jointly and severally, exonerate, indemnify, keep indemnified, reimburse and save and hold the Surety harmless from and against any and all demands, liabilities, losses, costs, damages, attorneys' fees and expenses, investigative fees and expenses, accountants' fees and expenses, engineering and other professional or consultants' fees and expenses of any kind, in-house attorneys' fees and expenses, interest, court costs and any and all other types of losses, costs or expenses of whatsoever kind or nature, and from and against all such losses, costs or expenses which the Surety may sustain or incur or which arise by reason of or in any manner in consequence of, no matter how remotely, any one or more of the following: the execution or procurement by the Surety of any Bond; the failure of any Principal or Indemnitor to perform or comply with any and all of the terms, covenants and conditions of this Agreement; the enforcement of any of the terms, covenants and conditions of this Agreement; the conduct of any investigation regarding the Surety's alleged obligations or liabilities under any Bond or in connection with any Contract; any attempt by or on behalf of the Surety to obtain a release or reduction of the Surety's liability or alleged liability under any Bond or Contract; any attempt by or on behalf of the Surety to recover any unpaid premium in connection with any Bond; the prosecution or defense of any action or claim of whatsoever kind or nature in connection with any Bond or Contract whether the Surety, in its sole and absolute discretion, elects to employ its own counsel or, in lieu thereof or in addition thereto, permits or requires any Principal and/or Indemnitor to make arrangements for or assist in the Surety's legal representation and protection; the loan or advance of any monies to any Principal or Indemnitor; the Surety's attempt to determine, discharge or mitigate its loss or exposure to loss in connection with any Bond or Contract, or to enforce any of its rights pursuant to this Agreement, by suit or otherwise.

In the event of any payment of any kind by the Surety, the Principal and Indemnitor further agree that the liability of the Principal and the Indemnitor shall extend to and include, and the Surety shall be entitled to charge and recover for, any and all disbursements made by it in Good Faith under the belief that: (1) any Principal or Indemnitor is or has been in default under or pursuant to this Agreement; or (2) the Surety was or might be liable to pay the claims asserted or the sums paid, whether or not such liability actually existed; or (3) such payments were or are necessary or expedient, in the Surety's sole and absolute discretion, to protect any of the Surety's rights or interests or to avoid or lessen the Surety's liability or alleged liability, whether or not such liability, necessity or expediency actually existed; and the Principal and Indemnitor further agree, acknowledge and stipulate that, notwithstanding the foregoing or any other provision of this Agreement or any other agreement relating to this Agreement, the Surety shall be entitled to the rights and remedies set forth in this Section III, and to all of the benefits of this Agreement, with respect to any liability, payment, loss or cost that is incurred or made by the Surety in Good Faith. The Principal and Indemnitor further agree that the liability of the Principal and Indemnitor shall extend to and include an obligation to pay to the Surety interest on any payments made by the Surety as a result of having issued any Bond, at the rate of ten percent (10%) per annum or the maximum rate allowed by law, whichever is lower, calculated from the date such payment is made by the Surety.

## IV. ASSIGNMENT

A. As security for all of the provisions of this Agreement and any other indebtedness or liabilities of the Principal and Indemnitor to the Surety, whenever and however incurred, the Principal and Indemnitor do hereby assign, transfer, pledge, convey and set-over to the Surety the property, rights and entitlements, and any proceeds thereof, whether such property, rights, entitlements or proceeds shall be now owned or hereafter acquired, described hereinbelow:

   1. All right, title and interest of any Principal or Indemnitor in, to or arising in any manner out of any Contract including, without limitation, the right to receive progress payments, payments on claims, changes or allowances, retained sums or any and all other monies due or to become due deriving in any manner from any Contract;

   2. All right, title and interest of any Principal or Indemnitor in any equipment, machinery, plant, tools, inventory, or materials which are now or may thereinafter be ordered, stored or utilized in connection with any Contract, whether or not any such materials are located at a construction site, in storage, in transit or elsewhere;

   3. All right, title and interest of any Principal or Indemnitor in and to all subcontracts or purchase orders let or entered into in connection with any Contract;

   4. All right, title and interest of any Principal or Indemnitor in and to any and all surety bonds, guarantees or other undertakings supporting subcontracts or purchase orders let or entered into in connection with any Contract;

   5. Any and all rights of any Principal or Indemnitor arising out of, or monies due or to become due in connection with, any and all annuities or insurance policies of any type, including but not limited to commercial general liability policies, project wrap-around policies, umbrella policies, property policies, fidelity bonds or policies, life insurance policies, and any and all other policies relating to claims arising out of the performance of any Contract;

   6. All right, title and interest of any Principal or Indemnitor in and to any causes of action, claims, demands, or actions of whatsoever kind or nature which any Principal may have or acquire against any party to any Contract, or causes of action, claims, demands, or actions of whatsoever kind or nature arising out of or connected with any Contract, including but not limited to, actions against any owner, obligee, design professional, subcontractor, supplier, laborer, material man or any other person or entity performing or providing labor, materials or services in connection with any work called for in connection with any Contract.

   7. All right, title and interest, or use of any license, patents, trademarks or copyrights held by the Principal or Indemnitor in connection with or relating to work required in the performance of any Contract.

   8. All right, title and interest and estate in and to all real and personal property which Principal and/or Indemnitor now owns or hereinafter acquires, including all income and receipts therefrom and increases and appreciation thereon; and

   9. All right, title and interest in and to any and all premium and/or other amounts due the agent.

B. The assignments set forth in this Section IV are effective as of the date of this Agreement.

C. The assignments set forth in this Section IV shall, at the Surety's election and without limiting the Surety's rights as otherwise provided at law or in equity or by this Agreement, be in addition to, but shall not in any way impair, any rights of subrogation which the Surety may have which rights of subrogation shall survive unimpaired by this assignment or by any exercise by the Surety of its rights hereunder.

## V. UNIFORM COMMERCIAL CODE

With respect to the assignments set forth in Section IV of this Agreement, this Agreement shall constitute a Security Agreement for the benefit of the Surety and also a Financing Statement, both in accordance with the provisions of the Uniform Commercial Code or similar statute of every jurisdiction wherein such Code or statute is in effect, and may be so used by the Surety without in any way abrogating, restricting or limiting the rights of the Surety under this Agreement, any other agreements between or among the Surety, any Principal or Indemnitor under law, or in equity. A carbon copy, photographic copy or other reproduction of this Agreement shall be sufficient to be, and may be filed as, a Financing Statement or Security Agreement, and the Principal and Indemnitor expressly consent to and authorize such a filing by the Surety. The failure of the Surety to file this Agreement or a copy of this Agreement shall not release or excuse any of the obligations of any Principal or Indemnitor under this Agreement, or otherwise. The Surety may add

such schedules to this Agreement as it deems advisable, describing more specifically items of security covered by this Assignment. Notwithstanding the foregoing, the Principal and Indemnitor shall execute and deliver to the Surety, upon its request, such further or additional instruments as may be necessary or desirable in the Surety's sole and absolute discretion to permit or facilitate either the filing of this Agreement as a Financing Statement or Security Agreement, or the filing of any separate Financing Statement or Security Agreement, based upon this Agreement, in such states, counties, or other places as the Surety may deem necessary or advisable. The Indemnitor acknowledges and agrees that, with respect to any settlement of a claim against a Bond involving disposition of rights, remedies, claims or interests arising under or in relation to the Bonded Contract, such disposition will conclusively be deemed to have been commercially reasonable so long as the settlement of the claim is otherwise in accordance with the standards set forth in this Agreement or otherwise applicable with respect to the settlement of such claims.

## VI. ATTORNEY IN FACT

The Principal and Indemnitor hereby irrevocably nominate, constitute, appoint and designate the Surety as their attorney-in-fact with the right, but not the obligation, to exercise all of the rights of such Principal and Indemnitor assigned, transferred and set over to the Surety in this Agreement, and in the name of such Principal and Indemnitor to make, execute, and deliver any and all additional or other assignments, documents or papers deemed necessary and proper by the Surety in order to give full effect not only to the intent and meaning of the within assignments, but also to the full protection intended to be herein given to the Surety under all other provisions of this Agreement. The Principal and Indemnitor hereby ratify and confirm all acts and actions taken and done by the Surety as such attorney-in-fact. Without limiting the generality of the foregoing, the Principal and Indemnitor expressly agree and recognize that the powers given to the Surety herein, as attorney-in-fact, include the powers and authority to execute any and all documents, including but not limited to: deeds, checks, stock certificates, bonds, and to take any and all actions that the Surety may deem necessary in order to liquidate or acquire any property, real or personal, assigned, transferred to, or acquired by the Surety as security, indemnity, or reimbursement in connection with the obligations of the Principal and Indemnitor pursuant to this Agreement.

## VII. TRUST FUNDS

The Principal and Indemnitor agree and hereby expressly declare that all funds received by any Principal or Indemnitor, or due or to become due under any Bonded Contract, are trust funds, in which the Surety has an interest, whether in the possession of any Principal or another, for the benefit of and payment to the Surety and all persons to whom the Principal incurs obligations in the performance of such Bonded Contract and to which the Surety would be liable under such Bonded Contract, or for the benefit of, payment to or reimbursement of the Surety for any liability, loss, cost or expense the Surety may sustain or incur under any Bond or which is otherwise recoverable under this Agreement. If the Surety discharges any such obligation, it shall be entitled to assert the claims of any such person or entity to the trust funds. Any Principal shall, upon demand of the Surety and implementation of the trust or trusts hereby created, deposit or cause to be deposited said trust funds either in an account or separate accounts to be held by the Surety and/or in an account or separate accounts with a bank, third-party contract escrow agent or similar depository approved by the Surety. Any or all of the aforementioned account or separate accounts shall be designated as a trust account or trust accounts for the deposit of such trust funds. The Principal and Indemnitor agree and hereby acknowledge that the withdrawal(s) from any such trust account(s) by check, wire transfer, or similar instrument shall be signed or executed by a representative of the Surety and/or any other designated signatory as may be directed by the Surety, including but not limited to a third-party escrow agent. Said trust or trusts shall terminate on the payment by the Principal and Indemnitor of all of the obligations for the payment of which the trust or trusts are hereby created, or upon the expiration of twenty (20) years from the date hereof, whichever shall first occur.

## VIII. JOINTS CHECKS

Upon the occurrence of an Event of Default, and upon the written request of the Surety, the Principal shall direct any Bond obligees or project owners as may be designated by the Surety to deposit any further progress payment or other forms of payment in relation to any Contract to a specified bank account, or to make checks payable, jointly, to the Principal and the Surety or to the Principal and such laborers, materialmen or others as may be indicated by the Surety.

## IX. SETTLEMENTS

The Surety shall have the right, in its sole and absolute discretion, to adjust, settle, prosecute, defend, compromise, litigate, protest, or appeal any claim, demand, suit, award, assessment or judgment on or in connection with any Bond or Bonded Contract. If, however, any Principal or Indemnitor desires that the Surety consider adjusting, settling, prosecuting, defending, compromising, litigating, protesting, or appealing, any claim, demand, suit, award, assessment, or judgment against any Principal or the Surety, such Principal or Indemnitor shall:

A. Give written notice to the Surety to this effect by certified or registered mail; and
B. Simultaneously therewith, deposit with the Surety cash, securities or other collateral, in form and amount acceptable to the Surety in its sole and absolute discretion, to completely cover the Surety's exposure or perceived exposure to any loss, cost or expense for which the Surety is entitled to exoneration, indemnification or reimbursement pursuant to this Agreement. The Surety shall be entitled to utilize counsel of its own choice in prosecuting, defending, resisting, litigating or appealing any such claim, demand, suit, award or judgment, or in appealing from any judgment, award or assessment, whether or not any Principal or Indemnitor also provides their own counsel, and all associated costs and expenses shall be recoverable by the Surety pursuant to this Agreement.

The Principal and/or Indemnitor's performance of both sub-Section A and B of this Section IX shall be an absolute condition precedent to the right of the Principal and/or Indemnitor to challenge the Surety's Good Faith with respect to settlement of any claims asserted against the Surety.. The Principal and/or Indemnitor's performance of both sub-Sections A and B of this Section IX shall not, however, in any way diminish the right of the Surety to compromise, settle, pay, or otherwise discharge any claim, demand, suit, award or judgment in its sole and absolute discretion, subject only to its obligation of Good Faith as provided herein.

## X.  REIMBURSEMENT

In the event of any payment by the Surety, an itemized statement of the amount of any such payment sworn to by any officer or authorized representative of the Surety, or any voucher or vouchers, invoices or other evidence of such payment shall be prima facie evidence of the fact and the amount of such payment, and the extent of the liability of any Principal and Indemnitor to the Surety, and in the absence of actual fraud shall be final, conclusive and binding upon any Principal and Indemnitor in any claim, suit or other proceeding by the Surety to recover the amount of such payments pursuant to this Agreement or otherwise.

## XI.  DEPOSIT WITH SURETY

A.  If an Event of Default shall occur, or if any claim is made against the Surety by any subcontractor, supplier, obligee or other person under any Bond, whether such event or claim shall be disputed or undisputed, contingent or non-contingent, liquidated or unliquidated, and without limiting any other rights and remedies of the Surety under this Agreement or otherwise existing in law or at equity, upon the Surety's demand the Principal and Indemnitor shall immediately deposit with the Surety money, securities or other collateral in any amount, value, form, and source as may be designated by and acceptable to the Surety in its sole and absolute discretion. Any such monies, securities or other collateral shall be held by the Surety as collateral security, in addition to and not in lieu of or substitution for any monies, securities or other collateral that may have been previously deposited with the Surety by or on behalf of the Principal and any other benefits and protections afforded to the Surety by this Agreement or any other agreement. The Surety shall have no obligation to invest the monies, securities or proceeds from any collateral security or to provide a return on any collateral security deposited pursuant to this Section XI.

B.  The Surety shall have the right, at any time and without notice or legal process, to deposit, invest, convert, cash, exchange, renew, sell or otherwise dispose of said collateral security or the proceeds thereof in any manner, in such form and on such terms as it deems proper. The Surety shall have the right to use such funds, securities or other collateral, or any part thereof, at any time, without notice or legal process and in the Surety's sole and absolute discretion, in payment or compromise of any premiums, liability, claims, demands, judgments, damages, awards, fees, expenses, disbursements or any other costs recoverable by the Surety pursuant to this Agreement or to reimburse itself in the event that the Surety shall have paid or subsequently pays any such premiums, liability, claims, demands, judgments, damages, awards, fees, expenses, disbursements or any other costs recoverable by the Surety pursuant to this Agreement.

C.  To the extent that the Surety accepts collateral other than money or negotiable securities pursuant to this Section XI, the Surety may sell or liquidate such collateral at public or private sale to itself or to any other person with or without notice to any Principal or Indemnitor. In the event of such sale, the Surety shall be liable or accountable to the Principal or Indemnitor only for surplus funds realized after all the Principal and Indemnitor's obligations to the Surety pursuant to this Agreement or otherwise have been met.

D.  If the Surety shall make demand upon any Principal and/or Indemnitor, written demand by the Surety to such Principal and/or Indemnitor at the address provided herein or last known to the Surety shall be deemed sufficient.

E.  The Surety shall not be liable to any Principal or Indemnitor for any actions taken by the Surety pursuant to this Section XI under the Good Faith belief that it was liable or potentially liable for any payment made, whether or not such liability in fact exists or existed. The Surety shall not be liable to any Principal or Indemnitor for any diminution in value, loss, damage or destruction of or to collateral held by the Surety, no matter how such diminution in value, loss, damage or destruction may occur. In connection with any certificate of deposit or any other instrument evidencing the deposit of money with any person, firm, or corporation included in the collateral security, it is understood that the respective Principal or Indemnitor selected the depository and assumes full responsibility for the safety of the deposited funds.

F.  The rights given to the Surety under this Section XI shall be in addition to, and not in limitation of, any other rights which the Surety may have, including rights under other provisions of this Agreement or any other separate agreement, or otherwise existing or arising under law, or in equity.

G.  The Principal and Indemnitor recognize, acknowledge and agree that the amount of any collateral demand made under this Section XI shall be deemed a liquidated amount, immediately due and owing upon demand, for purposes of confession of judgment, summary judgment, or any other method or process utilized by the Surety to enforce the terms of this Agreement.

H.  The Principal and Indemnitor shall be entitled to a refund of any unused portion of any collateral security deposited pursuant to this Section XI upon termination of the Surety's liability on all Bonds and the performance by the Principal and Indemnitor of all obligations to the Surety pursuant to this Agreement.

## XII.  TAKEOVER

Upon the occurrence of an Event of Default, the Surety shall have the right, but not the obligation, in its sole and absolute discretion, and is hereby authorized, with or without exercising any other right or option conferred upon it by law or by the terms of this

Agreement, to take possession of any part or all of the work under any Bonded Contract and, at the cost and expense of the Principal and Indemnitor, to complete or to arrange for the completion of such Bonded Contract, and the Principal and Indemnitor shall promptly, upon demand, pay to the Surety all costs, losses and expenses incurred by the Surety or otherwise recoverable pursuant to any of the provisions of this Agreement. Upon the occurrence of an Event of Default, the Surety shall have the right, but not the obligation, to take possession of the Principal's equipment, materials and supplies at the site of the work or elsewhere, and utilize the same for the completion of any Bonded Contract.

## XIII.  ADVANCES
The Surety, in its sole and absolute discretion, is authorized and empowered, but not required, to guaranty loans, to advance or lend to or for the account of the Principal any money which the Surety may see fit, in connection with any Bonded Contract. All money expended by the Surety, or loaned or advanced to or for the account of the Principal or Indemnitor or guaranteed by the Surety for the Principal, and any and all related costs and expenses incurred by the Surety, including all fees and expenses otherwise recoverable pursuant to this Agreement, shall be conclusively deemed to be a loss to the Surety for which the Principal and Indemnitor shall be liable under this Agreement. The Surety may make any advances or loans it sees fit without the necessity of seeing to the application of the proceeds thereof. The Principal and Indemnitor shall be obligated to indemnify and hold the Surety harmless in accordance with the terms of this Agreement for the amount of any and all such advances or loans, plus related costs, expenses and interest, notwithstanding the fact that some or all of the proceeds thereof may not have been utilized by the Principal in connection with Bonded Contracts or otherwise, for the purposes which the money was advanced or loaned. Notwithstanding the fact that the Surety may have advanced or loaned money to the Principal, the Surety retains the absolute right to cancel any such guaranty or to cease advancing or lending money to the Principal, or for the account of the Principal, with or without cause, with or without notice to the Principal or Indemnitor, and in the sole and absolute discretion of the Surety.

## XIV.  PREMIUMS
The Principal and Indemnitor shall pay to the Surety or to any agent of the Surety when due all premiums and charges of the Surety and/or its agent for any Bond in accordance with the Surety's rate filings and manual of rates, or as otherwise may be agreed.

## XV.  BOOKS, RECORDS AND INFORMATION
The Principal and Indemnitor shall furnish to the Surety such information as the Surety may request from time to time concerning the financial condition of the Principal or Indemnitor, the status of work under any Contract, the condition or status of the performance of any Contract, the payment of any obligations incurred in connection with any Contract, the status of claims or entitlements of the Principal in connection with any Contract, or in connection with any subcontract, supply or service accounts the Principal may have with third parties in connection with any Contract. Until such time as the liability of the Surety under any and all Bonds is terminated, the Surety shall have the right to access all of the books, records and accounts of the Principal or Indemnitor, wherever located, at any and all reasonable times, and upon reasonable notice. The Surety shall have access to any information maintained on behalf of or in connection with the Principal or Indemnitor at any banks, depositories, with any obligees on any Bond, information maintained by credit reporting agencies, materialmen, supply houses or any other persons, firms, or corporations doing business with the Principal, whenever requested by the Surety, and all of the foregoing entities are hereby expressly authorized to furnish to the Surety any information requested by it, including but not limited to, information concerning the status of the work performed under any Contract being performed by the Principal, the condition of the performance of any Contract, the status of and payments on any and all of the Principal's projects, whether bonded or unbonded, any related subcontractor or supplier accounts or obligations and all of the Principal or Indemnitor's bank accounts. The Principal hereby further authorizes the Surety, through its representatives, to visit job sites and projects described in any Contract, to obtain access to all job records and personnel of the Principal or any owners or obligees to determine the status of work on any Contract, and to obtain any and all other information and documents deemed necessary in the Surety's sole and absolute discretion for the protection of its interests. The Surety shall have access to any information maintained by any Certified Public Accountant ("CPA") or accountant employed by or representing the Principal and/or Indemnitor, including without limitation, any CPA work papers or other financial information in any form maintained, compiled, or assembled by any CPA firm. Presentation of this Agreement shall constitute the Principal and/or Indemnitor's consent to the release of all such information and an express waiver of any and all applicable privileges. The Surety's entitlement to information hereunder shall not be conditioned upon the occurrence of an Event of Default.

## XVI.  DECLINE EXECUTION
Unless otherwise specifically agreed in writing, the Surety may, in its sole and absolute discretion, decline to issue or to execute any Bond requested or applied for by the Principal without incurring any liability whatsoever to the Principal or Indemnitor, and the Principal and Indemnitor hereby covenant and agree to make no claim to the contrary. If the Surety shall execute a bid or proposal Bond, or consent of surety, or any similar undertaking, it shall nevertheless have the right, in its sole and absolute discretion, without incurring any liability to the Principal or Indemnitor thereof, to decline to execute any final or other Bond that may be required in connection with any award that may be made under the proposal for which the bid or proposal Bond, or consent of surety, is given. Notwithstanding the foregoing, the Principal and Indemnitor are not obligated to request the Surety to execute, provide or procure any Bond required of them in the performance and fulfillment of the Principal's obligations.  The Principal and Indemnitor acknowledge that the Surety makes no representation as to the validity or acceptability of any Bonds provided to any person or entity, and Principal

and Indemnitor agree that they shall have the sole responsibility to determine whether Bonds which they and the Surety may execute are in proper form and they shall have no claim against the Surety arising out of or in any manner relating to the failure or refusal of any person or entity to award any contract to the Principal or to accept any Bond executed and delivered by the Surety or that the Surety has been requested to execute and deliver.

## XVII.  NOTICE OF CLAIMS

If the Principal or Indemnitor become aware of any claim, potential claim, demand, notice of claim or proceeding which may result in any liability to the Surety under any Bond, the Principal and Indemnitor shall notify the Surety, in writing, of the nature and substance of such claim, identifying the claimant, the project or matter in connection with which the claim has arisen, the amount of the claim and any other information reasonably necessary to assist the Surety in assessing its potential liability. Written notice hereunder shall be provided to the Surety within five (5) calendar days of the first date upon which the Principal or Indemnitor become aware of the existence of such a claim or demand. In addition to such notice, the Principal and Indemnitor shall keep the Surety apprised of any material developments relating to such claim or demand, and the Principal and Indemnitor shall furnish the Surety with any additional information which the Surety may reasonably request relating to such claim or demand.

## XVIII.  WAIVER OF NOTICE

The Principal and Indemnitor waive all notice of the execution of any Bond and the acceptance of this Agreement. The Principal and Indemnitor waive all notice of any default, or of any other act or acts giving rise to any claim or liability under any Bond or this Agreement, as well as notice of any and all liability of the Surety under any Bond, or any facts or information concerning the rights or liabilities of the Surety, the Principal or Indemnitor, and notice of any and all liability on their parts hereunder, to the end and effect that the Principal and Indemnitor shall be and continue to be liable hereunder notwithstanding any notice of any kind to which they otherwise might have been entitled, and notwithstanding any defenses they otherwise might have been entitled to make. The Surety shall have the right, in its sole and absolute discretion, without notice to or knowledge of the Principal or Indemnitor, to:

A.  Increase or decrease the penalty or penalties of any Bond, to change any obligees thereon, to execute any continuations, enlargements, modifications or renewals thereof or substitution therefor with the same or different conditions, provisions, or obligees, and with the same, larger or smaller penalties, it being agreed that this Agreement shall apply to and cover such new or altered Bond or renewals even though the consent of the Surety may or does substantially increase the liability of the Principal or Indemnitor; or

B.  Take such steps as the Surety may deem necessary or expedient to obtain its release from liability or lessen or mitigate its liability under any Bond or in connection with any Contract; or

C.  Assent to any changes in any Contract, including, but not limited to, any change in the time for completion or performance of any Contract and to payments or advances thereunder; or

D.  Make, assent to, or take any assignment.

## XIX.  SUITS

Separate suits may be brought hereunder by the Surety as causes of action accrue, or otherwise, and the bringing of suit or recovery of judgment upon any cause of action or the failure to commence suit on any cause of action shall not prejudice, waive, bar, limit, impair or estop the Surety's right to bring other suits upon other causes of action, against the same or different parties, in its discretion, after such other causes of action may have arisen. Separate suits may be brought hereunder by the Surety with respect to any claims and against any or all of the Principal or Indemnitor, or against any one or several but fewer than all of the Principal and Indemnitor, and the bringing of such suit or suits or the recovery of judgment with respect to any one claim or against one or more but fewer than all of the Principal and Indemnitor shall not prejudice, waive, bar, limit, impair or estop the bringing of suit or suits with respect to any remaining claims and/or against the remaining Principal and Indemnitor. The Surety is hereby expressly authorized by the Principal and Indemnitor to compromise or settle any claim based upon this Agreement with any one or more of the Principal or Indemnitor individually, and such compromise or settlement shall not affect the liability of any non-settling Principal or Indemnitor to the Surety.

## XX.  CHOICE OF FORUM, VENUE, JURISDICTION AND CHOICE OF LAW

The Principal and Indemnitor hereby consent to enforcement of this Agreement and submit themselves to personal jurisdiction in any and all jurisdictions in which (a) the Surety may sustain or pay any loss for which the Principal and Indemnitor may be liable hereunder; (b) the Surety may be sued or be subject to suit or arbitration as a consequence of having issued any Bond on behalf of the Principal; (c) any construction project may be located which is the subject of any Bonded Contract; and/or (d) any assets of any Principal or Indemnitor may be located.

In addition, and without limiting the generality of the foregoing, the Principal and Indemnitor hereby consent to enforcement of this Agreement and submit themselves to personal jurisdiction in the federal or state court located in the County of Los Angeles, State of California, having subject matter jurisdiction over such a proceeding. The Principal and Indemnitor irrevocably consent to exclusive jurisdiction and venue in such court as may be selected by the Surety among the alternative jurisdictions to which the Principal and Indemnitor have consented to submit themselves to personal jurisdiction as set forth above and hereby waive any and all rights to object to such venue and jurisdiction. The Principal and Indemnitor further agree that (i) all obligations of the Principal and Indemnitor hereunder are performable, and all monies due the Surety hereunder are payable, in that location; and (ii) this Agreement

shall be construed and enforced in accordance with the laws of that state, including, but not limited to, statute(s) of limitations, without regard to the conflict of law rules of that state or any other state.

**XXI. SERVICE OF PROCESS**
If any proceeding is brought against the Surety in which the Surety desires to join any one or more of the Principal and Indemnitor by reason of their undertakings in this Agreement, each and all of the Principal and Indemnitor agree that he, she, it or they will, upon written notice of the Surety to do so, voluntarily appear in such proceedings and accept service of process and other papers, either personally or by an attorney of such Principal or Indemnitor's choice. With respect to any action brought by the Surety on this Agreement in the jurisdiction in which one or more of the Principal or Indemnitor resides, is domiciled, is doing business or is found, has consented to, or in which one or more or any portion of any Bonded Contract or construction project is located, each of the Principal and Indemnitor not in that jurisdiction hereby designates each of the Principal and Indemnitor in such jurisdiction as his, hers, its or their agent to receive process on his, hers, its or their behalf in such action. The Principal and Indemnitor hereby consent to the jurisdiction and venue of any court in which the Surety elects to bring any action against them, or each of them, pursuant to this Agreement, or otherwise.

**XXII. OTHER INDEMNITY**
The Principal and Indemnitor shall continue to remain bound under the terms of this Agreement even though the Surety may have from time to time heretofore or hereafter, with or without notice to or knowledge of the Principal or Indemnitor, accepted or released other agreements, agreements of indemnity or collateral in connection with the execution or procurement of any Bond from the Principal or Indemnitor or others, it being expressly understood and agreed by the Principal and Indemnitor that any and all other rights which the Surety may have or acquire against the Principal or Indemnitor or others under any such other or additional agreements of indemnity, or collateral, shall be cumulative and in addition to, and not in lieu of or substitution for, any of the rights afforded the Surety under this Agreement, and vice versa. The execution of any subsequent agreements of indemnity shall not be construed as a novation and this Agreement may only be terminated as hereinafter provided.

**XXIII. SUBORDINATION OF INDEMNITOR**
The Indemnitor shall have no rights of indemnity or contribution against any Principal or Indemnitor's property until all of the Principal and Indemnitor's obligations to the Surety under this Agreement have been satisfied in full.

**XXIV. ADDITIONAL SURETIES**
In the event that the Surety procures the execution of any Bond by any other surety or sureties, or executes any Bond with co-sureties, or reinsures any portion of any Bond with reinsuring sureties, then all of the terms and conditions of this Agreement shall inure to the benefit of such other sureties, co-sureties and reinsuring sureties as their interests may appear, provided, however, that it is the intent of this Agreement that the Surety is and shall be conclusively presumed to be a real party in interest under this Agreement to the full extent of liability, loss, cost or expense incurred in connection with, related to or arising out of a Bond or an Event of Default regardless of whether such liability or loss, cost or expense may involve a surety or reinsurer, or the like, and regardless of whether a co-surety or reinsurer, or the like, has some or may bear some or all of such liability or loss, cost or expense, provided that the Indemnitor may request as a condition to such presumption that the Surety provide reasonable assurance that the Indemnitor shall not be subject to redundant liability under this Agreement.

**XXV. SURETYSHIP COVERED**
This Agreement applies to all Bonds executed or procured by the Surety for or on behalf of the Principal, in the Principal's own name or names or as co-venturers with others, whether prior or subsequent to the execution and delivery of this Agreement, and from time to time until this Agreement is terminated in accordance with its terms.

**XXVI. DISCHARGE FROM SURETYSHIP**
The Principal and Indemnitor will, at any time upon the request of the Surety, procure the discharge or release of the Surety from any Bond and from any and all liability by reason thereof. The Surety may, at any time, take such actions as it deems necessary or proper to obtain its release from any and all liability under any Bond.

**XXVII. WAIVER OF HOMESTEAD AND OTHER RIGHTS**
The Principal and Indemnitor hereby waive, so far as their respective obligations under this Agreement, all rights to claim any of their property, including their respective homesteads, as exempt from levy, execution or sale or other legal process under the laws of any state, territory or possession of the United States.

**XXVIII. NATURE OF THE SURETY'S RIGHTS**
All rights, remedies, powers and entitlements of the Surety under this Agreement or in any other agreements among the Surety, the Principal or Indemnitor, or by law, equity or statute, are cumulative, and the exercise of, or failure to exercise, any right, remedy, power or entitlement at any time shall not be deemed to be an election of remedy, estoppel or a waiver of any other right, remedy, power or entitlement. The Surety is not required to exhaust its remedies or rights against any Principal or await receipt of any

dividends from any Principal or its legal representatives before asserting its rights under this Agreement against the Indemnitor. The Surety is not required to pursue its rights against any collateral it holds pursuant to this Agreement or otherwise before asserting its rights under this Agreement against the Principal or Indemnitor. The rights, powers, remedies and entitlements given to the Surety by this Agreement shall be and are in addition to and not in lieu of or substitution for any and all other rights, powers, remedies and entitlements which the Surety may have or acquire against the Principal or Indemnitor, or others, whether by the terms of this Agreement, by the terms of any other agreements, by operation of law or otherwise. The Principal and Indemnitor hereby waive any defense that this Agreement was executed subsequent to the date of any Bond.

## XXIX. TERMINATION

This Agreement may be terminated prospectively, and not retroactively, by any Principal or any Indemnitor, and said termination shall become effective only after thirty (30) days following receipt by the Surety, at its home office in compliance with Section XXXV.F. of written notice to the Surety, but any notice of termination shall not operate to modify, bar, discharge, limit, affect or reduce the obligations of such Principal or Indemnitor under or pursuant to this Agreement, or otherwise, with respect to any Bond which is or was executed prior to the effective date of such termination, or with respect to any Bond executed after the effective date of such termination upon the award of any Contract to such Principal on a bid or proposal with respect to which the Surety has executed any bid or proposal Bond, consent of surety, or similar undertaking prior to the effective date of termination, or which the Surety has become obligated to execute prior to the effective date of termination, or with respect to the renewal, extension, substitution or modification of any such Bond, even though such renewal, extension, substitution or modification occurred after the expiration of the notice period provided herein. Further, such notice of termination shall operate only with respect to the respective Principal or Indemnitor upon whose behalf such notice shall have been given. No agent of the Surety shall have the right to alter the termination or any other provisions of this Agreement, and the Principal and/or Indemnitor may not rely upon any oral or written representations by any such alleged agent of the Surety and must strictly adhere to the provisions hereof in order to terminate this Agreement.

## XXX. INVALIDITY AND SEVERABILITY

If any Principal or Indemnitor fails to execute this Agreement, or if the execution hereof by any of the parties be defective or invalid for any reason, such failure, defect or invalidity shall not in any manner affect the validity of this Agreement or the liability hereunder of any of the parties executing it, but each and every party so executing shall be and remain fully bound and liable hereunder to the same extent as if such failure, defect or invalidity had not existed. The failure of any Principal to sign any Bond shall not release such Principal or Indemnitor from any liability under this Agreement. This Agreement shall be construed, first, to provide the most extensive protection possible to the Surety within any limits imposed by applicable law if and to the extent that any provision or term of this Agreement cannot be reasonably construed in such a way as to be enforceable under applicable law, then such provision or term shall be deemed to have been excised from this Agreement and this Agreement shall be enforced as though such provision or term had never been a part hereof. If any provision, part or subpart of this Agreement is or is held to be void or unenforceable under the laws of any place governing its construction or enforcement, this Agreement shall not be rendered void or unenforceable thereby, but the remainder of this Agreement shall continue and be enforceable as though such unenforceable provision, part or sub-part was omitted.

## XXXI. MODIFICATIONS

This Agreement may not be altered or modified orally. No change or modification shall be valid unless made by written endorsement, executed by an officer of the Surety and all of the Principals and Indemnitors.

## XXXII. CONSTRUCTION

This Agreement shall be liberally construed so as to protect, hold harmless, exonerate, reimburse and indemnify the Surety.

## XXXIII. WAIVER OF JURY TRIAL

THE PRINCIPAL AND THE INDEMNITOR EXPRESSLY AGREE THAT ANY SUIT, ACTION OR PROCEEDING, WHETHER CLAIM OR COUNTERCLAIM, BROUGHT OR INSTITUTED BY ANY PARTY TO THIS AGREEMENT, OR ANY OF THE SUCCESSORS OR ASSIGNS, IN CONNECTION WITH OR WITH RESPECT TO THIS AGREEMENT OR THE PRINCIPAL AND THE INDEMNITOR'S OBLIGATIONS HEREUNDER OR PURSUANT TO OR IN CONNECTION WITH ANY BONDS, CONTRACT OR BONDED CONTRACT SHALL BE TRIED ONLY BY A COURT AND NOT BY A JURY. THE PARTIES EXPRESSLY WAIVE ANY RIGHT TO A TRIAL BY JURY IN ANY SUCH ACTION OR PROCEEDING.

## XXXIV. SPECIFIC PERFORMANCE

The Principal and Indemnitor acknowledge that the failure of either to pay to the Surety, immediately upon demand, the sums demanded by the Surety pursuant to Section III and/or Section XI hereof and/or to provide access to books, records and information as required by Section XV hereof shall cause irreparable harm to the Surety for which the Surety has no adequate remedy at law. The Principal and Indemnitor agree that Surety shall be entitled at its election to immediate injunctive relief for specific performance of any and all obligations of the Principal and/or Indemnitor under this Agreement, including, but not limited to, such obligations as set

forth in Sections III, VII, VIII, XI and XV and to pay to the Surety all sums demanded hereunder, and the Principal and Indemnitor hereby waive any claims or defenses to the contrary.

## XXXV.  GENERAL PROVISIONS

A. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. The Principal and Indemnitor agree that there have been no oral or other agreements of any kind as a condition precedent, or to induce the execution and delivery of this Agreement by any party. Delivery of this Agreement by Indemnitor to the Surety and reliance of the Surety upon the representations and promises of Indemnitor as set forth in this Agreement shall be conclusively presumed from the possession by the Surety or the Surety's agent of a signed original or copy of this Agreement.  The Principal and Indemnitor agree that any scanned or electronically digitized copies of this document made by the Surety as part of any records storage, filing and/or retention program or otherwise shall be as effective as the original for all purposes and may be used by the Surety as though it were an original document for all purposes.

B. The security interests, assignment rights, trust, indemnity and other rights granted herein, shall not be deemed a waiver of the Surety's equitable subrogation rights or other rights, said security and rights granted herein being in addition to the rights of exoneration, subrogation, and other rights to which the Surety is entitled under law or in equity.

C. This Agreement sets forth executory undertakings of the Principal and Indemnitor, only, and there are no enforceable promises of the Surety set forth in this Agreement.  The Principal and Indemnitor acknowledge that the Surety shall not be required to be a signatory of this Agreement; however, if the Surety, in its discretion, shall execute a written acknowledgment or acceptance of this Agreement for any reason, such written acknowledgment or acceptance shall then constitute a part of this Agreement.

D. The release of any party to this Agreement shall not release any other party. The failure of any party to perform any of its obligations under this Agreement shall not excuse the performance of any other party to this Agreement.

E. The Indemnitor shall, at all times, remain familiar with the financial condition and operations of the Principal and the status of all Contracts.

F. The Principal and Indemnitor shall promptly provide all written notices to the Surety, as required by this Agreement or otherwise, by registered or certified mail, return receipt requested, directed to the Surety at 601 S. Figueroa Street, Suite 1600, Los Angeles, California 90017-5721.

G. Throughout this Agreement, all references in the singular shall also refer to the plural, and vice versa, all references in the conjunctive shall also refer to the disjunctive, and vice versa, and all references in the past tense shall also refer to the present or future tense, and vice versa.  The Section headings herein are included for convenience only and shall not be deemed to be part of this agreement.

IN WITNESS WHEREOF, the Principal and Indemnitor hereby execute this Agreement, under seal.

**Individual Indemnitor(s)**

| Stacey Gonzalez | _Signature_ |
|---|---|
| *Printed Individual Indemnitor Name* ▆▆▆▆▆▆▆▆ | |
| *Address* | |
| Robert Gonzalez | _Signature_ |
| *Printed Individual Indemnitor Name* ▆▆▆▆▆▆▆ | |
| *Address* | |
| *Printed Individual Indemnitor Name* | _Signature_ |
| *Address* | |
| *Printed Individual Indemnitor Name* | _Signature_ |
| *Address* | |
| *Printed Individual Indemnitor Name* | _Signature_ |
| *Address* | |

| Printed Individual Indemnitor Name | Signature |
|---|---|
| Address | |
| Printed Individual Indemnitor Name | Signature |
| Address | |
| Printed Individual Indemnitor Name | Signature |
| Address | |

**Corporate, LLC, Partnership, Trust or Other Entity Indemnitor**

Midstate Contractors, Inc.
*Entity Indemnitor Name*

Stacey Gonzalez, President
*Printed Signature Name and Title of Authorized Official*

1324 Seven Springs Blvd #165
New Port Richey, FL 34655
*Address*                                    *Signature*

*Entity Indemnitor Name*

*Printed Signature Name and Title of Authorized Official*

*Address*                                    *Signature*

*Entity Indemnitor Name*

*Printed Signature Name and Title of Authorized Official*

*Address*                                    *Signature*

*Entity Indemnitor Name*

*Printed Signature Name and Title of Authorized Official*

*Address*                                    *Signature*

*Entity Indemnitor Name*

*Printed Signature Name and Title of Authorized Official*

*Address*                                                    *Signature*

*Entity Indemnitor Name*

*Printed Signature Name and Title of Authorized Official*

*Address*                                                    *Signature*

*Entity Indemnitor Name*

*Printed Signature Name and Title of Authorized Official*

*Address*                                                    *Signature*

*Entity Indemnitor Name*

*Printed Signature Name and Title of Authorized Official*

*Address*                                                    *Signature*

*Entity Indemnitor Name*

*Printed Signature Name and Title of Authorized Official*

*Address*                                                    *Signature*

*Entity Indemnitor Name*

*Printed Signature Name and Title of Authorized Official*

*Address*                                                    *Signature*

State of ___FLORIDA___
County of ___PINELLAS___

On __Oct 13, 2015__ before me, __SHARI L. MORMON__ personally appeared Stacey Gonzalez, President of Midstate Contractors _____ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of ___FLORIDA___ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature __Shari L. Mormon__ (Seal)

SHARI L. MORMON
MY COMMISSION # EE 157116
EXPIRES: January 3, 2016
Bonded Thru Notary Public Underwriters

State of ___FLORIDA___
County of ___PINELLAS___

On __Oct 13, 2015__ before me, __SHARI L. MORMON__ personally appeared Stacey Gonzalez, Individually who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of ___FLORIDA___ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature __Shari L. Mormon__ (Seal)

SHARI L. MORMON
MY COMMISSION # EE 157116
EXPIRES: January 3, 2016
Bonded Thru Notary Public Underwriters

State of ___FLORIDA___
County of ___PINELLAS___

On __Oct 13, 2015__ before me, __SHARI L. MORMON__ personally appeared Robert Gonzalez, Individually who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of ___FLORIDA___ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature __Shari L. Mormon__ (Seal)

SHARI L. MORMON
MY COMMISSION # EE 157116
EXPIRES: January 3, 2016
Bonded Thru Notary Public Underwriters

State of _____
County of _____

On _____ before me, _____ personally appeared _____ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _____ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature_____ (Seal)

State of _____
County of _____

On _____ before me, _____ personally appeared _____ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _____ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature_____(Seal)

State of _____
County of _____

On _____ before me, _____ personally appeared _____ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _____ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature_____(Seal)

State of _____
County of _____

On _____ before me, _____ personally appeared _____ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _____ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature_____(Seal)

State of _____
County of _____

On _____ before me, _____ personally appeared _____ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _____ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature_____(Seal)

State of _____
County of _____

On _____ before me, _____ personally appeared _____ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _____ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature_____(Seal)

State of _____
County of _____

On _____ before me, _____ personally appeared _____ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _____ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature_____(Seal)

State of _____
County of _____

On _____ before me, _____ personally appeared _____ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _____ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature_____(Seal)

State of _____
County of _____

On _____ before me, _____ personally appeared _____ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _____ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature_____(Seal)

State of _____
County of _____

On _____ before me, _____ personally appeared _____ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _____ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature_____ (Seal)

State of _____
County of _____

On _____ before me, _____ personally appeared _____ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _____ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature_____ (Seal)

State of _____
County of _____

On _____ before me, _____ personally appeared _____ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _____ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature_____ (Seal)

State of _____
County of _____

On _____ before me, _____ personally appeared _____ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _____ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature_____ (Seal)

Solicitation No. IFB-15855CG

| HILLSBOROUGH TRANSIT AUTHORITY TAMPA, FLORIDA | Bond 1001054404 |
|---|---|

### EXHIBIT Q
# PAYMENT BOND

| PRINCIPAL (Legal name, business address and telephone number) | Date Bond Executed: 10/9/2015 (must be same as or later than contract date) |
|---|---|
| Midstate Contractors, Inc.<br>1324 Seven Springs Blvd. #165<br>New Port Richey, FL 34655 | **Type Of Organization ("X" one)**<br>☐ Individual  ☐ Partnership<br>☐ Joint Venture  ☒ Corporation<br>State of Incorporation FLORIDA |

| SURETY(IES) (Name(s, business address(es) and telephone number) | PENAL SUM OF BOND | |
|---|---|---|
| American Contractors Indemnity Company<br>601 S. Figueroa Street Suite 1600<br>Los Angeles, CA 90017 | $ 513,467.93 | |
| | CONTRACT DATE<br>9/21/2015 | CONTRACT NO.<br>VC-000520 |

| PROJECT (Address and description) |
|---|
| HART - VC-00520 3rd Floor Ybor Renovations |

**KNOW ALL MEN BY THESE PRESENTS,**
that we, the Principal and Surety(ies) hereto, are firmly bound to the Hillsborough Area Regional Transit (hereinafter called the Authority) and to all persons, firms, and corporations who may furnish materials for, and perform labor under the contract referred to above, in the above penal sum for the payment of which we bind ourselves, heirs, executors, administrators, and successors, jointly and severally; provided, that, where the Sureties are corporations acting as co-sureties, we, the Sureties, bind ourselves in such sum "jointly and severally" as well as "severally" only for the purpose of allowing a joint action or action against any or all of us, and for all other purposes each Surety binds itself, jointly and severally with the Principal, for the payment of such sums only as it is set forth opposite the name of such Surety, but if no limit of liability is indicated, the limit of liability shall be the full amount of the penal sum.

**THE CONDITION OF THIS OBLIGATION IS SUCH THAT,**
whereas the Principal has entered into the contract identified above,

**NOW, THEREFORE,**
If the Principal shall promptly make payment to all persons supplying labor and/or material in the prosecution of the work provided for in said contract, and any and all duly authorized modifications of said contract that may hereafter be made, notice of which modification(s) to the Surety(ies) being hereby waived, then this obligation shall be void and of no effect; otherwise, it shall remain in full force and effect. This bond is given to pursuant to the provisions of Florida State law, if any legal action be filed upon this bond, venue shall lie exclusively in Hillsborough County, Florida.

The entity identified as the RESIDENT AGENT of the Surety is hereby designated by the Surety as the Resident Agent in the State of Florida to whom any requisite notices may be delivered and on whom service of process may be had in matters arising out of such suretyship as required pursuant to Florida Statute 624.422..

**IN WITNESS WHEREOF,**
the Principal and Surety(ies) have executed this payment bond and have affixed their seals on the date set forth above.

| PRINCIPAL | | |
|---|---|---|
| Signature(s) | Typed Names and Titles | |
| 1.<br>(seal) | 1.  Stacey Gonzalez, President | Corporate Seal |
| 2.<br>(seal) | 2. | |

| CORPORATE SURETY(IES) | | |
|---|---|---|
| (Surety A)<br>Name &<br>Address | American Contractors Indemnity Company<br>601 S. Figueroa Street Suite 1600<br>Los Angeles, CA 900017 | State of Incorporation<br>California | Corporate Seal |
| | | Liability Limit $ 513,467.93 | |
| Signature(s) | 1.                (seal) | 2.                (seal) | |
| Name(s) &<br>Title(s) (Typed) | 1. Bradford J. Quiri, Attorney-in-Fact | 2. | |

The RESIDENT AGENT of the surety in the State of Florida, for the delivery of notice and service of process is:

Name: Bradford J. Quiri          Address: CCI Surety, Inc.

1408 N. Westshore Blvd Suite 120 Tampa, FL 33607

| Q-01 (MAR 12) | Page 1 of 2<br>Payment Bond | |
|---|---|---|



EXHIBIT
2

Solicitation No. IFB-15855CG

## CORPORATE SURETY(IES)

| (Surety B) Name & Address | | State of Incorporation | | Corporate Seal |
|---|---|---|---|---|
| | | Liability Limit $ | | |
| Signature(s) | 1.                    (seal) | 2.                    (seal) | | |
| Name(s) & Title(s) (Typed) | 1. | 2. | | |

The RESIDENT AGENT of the surety in the State of Florida, for the delivery of notice and service of process is:

Name: _____    Address: _____

| (Surety C) Name & Address | | State of Incorporation | | Corporate Seal |
|---|---|---|---|---|
| | | Liability Limit $ | | |
| Signature(s) | 1.    (seal) | 2.                    (seal) | | |
| Name(s) & Title(s) (Typed) | 1. | 2. | | |

The RESIDENT AGENT of the surety in the State of Florida, for the delivery of notice and service of process is:

Name: _____    Address: _____

| (Surety D) Name & Address | | State of Incorporation | | Corporate Seal |
|---|---|---|---|---|
| | | Liability Limit $ | | |
| Signature(s) | 1.    (seal) | 2.                    (seal) | | |
| Name(s) & Title(s) (Typed) | 1. | 2. | | |

The RESIDENT AGENT of the surety in the State of Florida, for the delivery of notice and service of process is:

Name: _____    Address: _____

## INSTRUCTIONS

1. This form is authorized for use in connection with construction work or the furnishing of supplies or services. There shall be no deviation from this form without approval by the Authority.

2. The full legal name and business address of the Principal shall be inserted in the space designated "Principal" on the face of this form. The bond shall be signed by an authorized person. When such person is signing in a representative capacity (e.g., an attorney-in-fact), but is not a member of the firm, partnership, or joint venture, or an officer of the corporation involved, a certified copy of the Power of Attorney must be attached. If the amount of the bond exceeds $100,000, the surety(ies) shall be approved for the amount of the bonds, and must hold a certificate of authority from the U.S. Secretary of the Treasury or have obtained reinsurance from a Treasury listed insurer, in accordance with the requirements of Florida.

3. The bond shall be executed by a corporate surety or corporate sureties duly authorized to do business in the State of Florida and licensed by the State of Florida to issue surety bonds. All payment bonds shall comply with Florida Statute 255.05 and comply with the notice and time limitations contained in Florida Statute 255.05(2).

4. Where more than a single corporate surety in involved, their names and addresses (City and State) shall be inserted in the spaces (Surety A, Surety B, etc.) headed "CORPORATE SURETY(IES)." In the space designated "SURETY(IES)" on the face of this form, only the letter identification of the Sureties shall be inserted.

5. Corporations executing the bond shall affix their corporate seals. Individuals shall execute the bond opposite the word "Seal".

6. The name and title of each person signing this payment bond should be typed in the space provided.

Solicitation No. IFB-1588GCG

Bond No. 100105404

HILLSBOROUGH TRANSIT AUTHORITY (HART)
TAMPA, FLORIDA

**EXHIBIT R**

# PERFORMANCE BOND

| PRINCIPAL (Legal name, business address and telephone number) | Date Bond Executed: 10/9/2015 (must be same as or later than contract date) |
|---|---|
| Midstate Contractors, Inc.<br>1234 Seven Springs Blvd. #165<br>New Port Richey, FL 34655 | Type Of Organization ("X" one)<br>Individual ☐ Partnership ☐<br>Corporation ☐ Joint Venture ☒<br>State of Incorporation: Florida |

| SURETY(IES) (Name(s), business address(es) and telephone number(s)) | PENAL SUM OF BOND |
|---|---|
| American Contractors Indemnity Company<br>601 S. Figueroa Street Suite 1600<br>Los Angeles, CA 90017 | $ 513,467.93 |

|  | CONTRACT DATE | CONTRACT NO. |
|---|---|---|
|  | 9/21/2015 | VC-000520 |

**PROJECT (Address and description)**

HART - VC-000520 3rd Floor Ybor Renovations

**KNOW ALL MEN BY THESE PRESENTS:**

That we, the Principal and Surety(ies) hereto, are firmly bound to the Hillsborough Transit Authority (hereinafter called the Authority) in the above penal sum for the payment of which we bind ourselves, our heirs, executors, administrators, and successors, jointly and severally; provided, that, where the Sureties are corporations acting as co-sureties, we, the Sureties, bind ourselves in such sum "jointly and severally" as well as "severally" only for the purpose of allowing a joint action or actions against any or all of us, and for all other purposes each Surety binds itself, jointly and severally with the Principal, for the payment of such sums only as is set forth opposite the name of such Surety, but if no limit of liability is indicated, the limit of liability shall be the full amount of the penal sum.

**THE CONDITION OF THIS OBLIGATION IS SUCH,** that whereas the Principal has entered into the contract identified above.

NOW THEREFORE:

If the Principal shall faithfully perform and fulfill all the undertakings, covenants, terms, conditions, and agreement of said contract, in accordance with the plans, specifications and contract documents, (including without limitation thereof said contract, and any authorized modifications of said contract that may hereafter be granted by the Authority, with or without notice to the Surety(ies), and during the life of any guaranty required under the contract, and shall also faithfully perform and fulfill all the undertakings, covenants, terms, conditions, and agreements of any and all duly authorized modifications of said contract that may hereafter be made, notice of which modifications to the Surety(ies) being hereby waived), then this obligation shall be void, otherwise, it shall remain in full force and effect. This bond is given pursuant to the provisions of Florida State law. If any legal action be filed upon this bond, venue shall lie exclusively in Hillsborough County, Florida.

The entity identified as the RESIDENT AGENT of the Surety is hereby designated by the Surety as the Resident Agent in the State of Florida to whom any requisite notices may be delivered and on whom service of process may be had in matters arising out of such suretyship as required pursuant to Florida Statute 624.422.

**IN WITNESS WHEREOF,** the Principal and Surety(ies) have executed this performance bond and have affixed their seals on the date set forth above.

## PRINCIPAL

| Signature(s) | Typed Names and Titles |  | Corporate Seal |
|---|---|---|---|
| 1. | Tracey Gonzalez, President | | Corporate Seal |
| 2. | | | |

## CORPORATE SURETY(IES)

| Surety A) | American Contractors Indemnity Company | State of Incorporation | |
|---|---|---|---|
| Name & Address | 601 S. Figueroa Street Suite 1600<br>Los Angeles, CA 90017 | Florida | Corporate Seal |
|  |  | Liability Limit $ 513,467.93 | |

| Signature(s) | 1. (seal) | 1. (seal) | Seal |
|---|---|---|---|
| Name(s) & Titles (Typed) | 2. | 2. | |
|  | 1. Bradford J. Guiri, Attorney-in-Fact | | |
|  | 2. | | |

The RESIDENT AGENT of the surety in the State of Florida, for the delivery of notice and service of process is:

| Name: | Bradford J Guiri, Inc. |
|---|---|
| Address: | CCI Surety, Inc. 1408 N. Westshore Blvd. Suite 120 Tampa, FL 33607 |

Solicitation No. IFB-15855CG

## CORPORATE SURETY(IES)

| (Surety B) Name & Address | | State of Incorporation | | Corporate Seal |
|---|---|---|---|---|
| | | Liability Limit $ | | |
| Signature(s) | 1.                    (seal) | 2.                    (seal) | | |
| Name(s) & Title(s) (Typed) | 1. | 2. | | |

The RESIDENT AGENT of the surety in the State of Florida, for the delivery of notice and service of process is:

Name: _____    Address: _____

_____

| (Surety C) Name & Address | | State of Incorporation | | Corporate Seal |
|---|---|---|---|---|
| Signature(s) | 1.                    (seal) | 2.                    (seal) | | |
| Name(s) & Title(s) (Typed) | 1. | 2. | | |

The RESIDENT AGENT of the surety in the State of Florida, for the delivery of notice and service of process is:

Name: _____    Address: _____

_____

### INSTRUCTIONS

1. This form is authorized for use in contracts with construction work or the furnishing of supplies or services. There shall be no deviation from this form without approval by the Authority.

2. The full legal name and business address of the Principal shall be inserted in the space designated "Principal" on the face of this form. The bond shall be signed by an authorized person. When such person is signing in a representative capacity (e.g., an attorney-in-fact), but is not a member of the firm, partnership, or joint venture, or an officer of the corporation involved, a certified copy of the Power of Attorney must be attached.

☐ The bond shall be executed by a corporate surety or corporate sureties duly authorized to do business in the State of Florida and licensed by the State of Florida to insure surety bonds. All payment bonds shall comply with the Florida Statute 255.05 and comply with the notice and time limitations contained in Florida Statute 255.05(2). If the amount of the bond exceeds $100,000, the surety(ies) shall be approved for the amount of the bonds, and must hold either a certificate of authority from the U.S. Secretary of the Treasury or have obtained reinsurance from a Treasury listed insurer.

4. Where more than a single corporate surety is involved, their names and addresses (City and State) shall be inserted in the spaces (Surety A, Surety B, etc.) headed "CORPORATE SURETY(IES)" on the face of this form, only the letter identification of the Sureties shall be inserted.

5. Corporations executing the bond shall affix their corporate seals. Individuals shall execute the bond opposite the word "Seal".

6. The name and title of each person signing this performance bond should be typed in the space provided.

2025

## POWER OF ATTORNEY

**AMERICAN CONTRACTORS INDEMNITY COMPANY    TEXAS BONDING COMPANY**
**UNITED STATES SURETY COMPANY    U.S. SPECIALTY INSURANCE COMPANY**

KNOW ALL MEN BY THESE PRESENTS: That American Contractors Indemnity Company, a California corporation, Texas Bonding Company, an assumed name of American Contractors Indemnity Company, United States Surety Company, a Maryland corporation and U.S. Specialty Insurance Company, a Texas corporation (collectively, the "Companies"), do by these presents make, constitute and appoint:

### Jeremy Crawford or Bradford J. Quiri

its true and lawful Attorney(s)-in-fact, each in their separate capacity if more than one is named above, with full power and authority hereby conferred in its name, place and stead, to execute, acknowledge and deliver any and all bonds, recognizances, undertakings, or other instruments or contracts of suretyship to include riders, amendments, and consents of surety, providing the bond penalty does not exceed **************Three Million*************** Dollars ($ ***3,000,000.00** ). This Power of Attorney shall expire without further action on December 20, 2017. This Power of Attorney is granted under and by authority of the following resolutions adopted by the Boards of Directors of the Companies:

*Be it Resolved*, that the President, any Vice-President, any Assistant Vice-President, any Secretary or any Assistant Secretary shall be and is hereby vested with full power and authority to appoint any one or more suitable persons as Attorney(s)-in-Fact to represent and act for and on behalf of the Company subject to the following provisions:

*Attorney-in-Fact* may be given full power and authority for and in the name of and on behalf of the Company, to execute, acknowledge and deliver, any and all bonds, recognizances, contracts, agreements of indemnity and other conditional or obligatory undertakings, including any and all consents for the release of retained percentages and/or final estimates on engineering and construction contracts, and any and all notices and documents canceling or terminating the Company's liability thereunder, and any such instruments so executed by any such Attorney-in-Fact shall be binding upon the Company as if signed by the President and sealed and effected by the Corporate Secretary.

*Be it Resolved*, that the signature of any authorized officer and seal of the Company heretofore or hereafter affixed to any power of attorney or any certificate relating thereto by facsimile and any power of attorney or certificate bearing facsimile signature or facsimile seal shall be valid and binding upon the Company with respect to any bond or undertaking to which it is attached.

IN WITNESS WHEREOF, The Companies have caused this instrument to be signed and their corporate seals to be hereto affixed, this 1st day of December, 2014.

**AMERICAN CONTRACTORS INDEMNITY COMPANY    TEXAS BONDING COMPANY**
**UNITED STATES SURETY COMPANY    U.S. SPECIALTY INSURANCE COMPANY**

Corporate Seals

By: _____
**Daniel P. Aguilar, Vice President**

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of Los Angeles    SS:

On this 1st day of December, 2014, before me, Maria G. Rodriguez-Wong, a notary public, personally appeared Dan P. Aguilar, Vice President of American Contractors Indemnity Company, Texas Bonding Company, United States Surety Company and U.S. Specialty Insurance Company who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.
WITNESS my hand and official seal.

Signature _____ (Seal)

MARIA G. RODRIGUEZ-WONG
Commission # 2049771
Notary Public - California
Los Angeles County
My Comm. Expires Dec 20, 2017

I, Michael Chalekson , Assistant Secretary of American Contractors Indemnity Company, Texas Bonding Company, United States Surety Company and U.S. Specialty Insurance Company, do hereby certify that the above and foregoing is a true and correct copy of a Power of Attorney, executed by said Companies, which is still in full force and effect; furthermore, the resolutions of the Boards of Directors, set out in the Power of Attorney are in full force and effect.

In Witness Whereof, I have hereunto set my hand and affixed the seals of said Companies at Los Angeles, California this ____ day of _____ , 20___.

Corporate Seals

_____
**Michael Chalekson, Assistant Secretary**

Bond No. 100 105 4404
Agency No. 17595

# THOMPSON & SLAGLE, LLC
### ATTORNEYS AT LAW
#### WWW.TANDSLAWFIRM.COM

DEWITTE THOMPSON (GA AND FL)
JEFF B. SLAGLE
JOHN D. ALEXANDER
KELLEY C. HERRIN
JOSEPH H. WOLENSKI (GA, FL)

PLEASE REPLY TO GEORGIA OFFICE:
12000 FINDLEY ROAD
SUITE 250
JOHNS CREEK, GEORGIA 30097
PHONE: 770-662-5999
FAX:    770-447-6063

JOSEPH H. WOLENSKI
JWOLENSKI@TANDSLAWFIRM.COM

May 30, 2017

**Via USPS First Class Mail and USPS Certified Mail—Return Receipt Requested**
Midstate Contractors, Inc.
35111 US HWY 19 N #203
Palm Harbor, FL 34684

Robert Gonzalez as Executor for the Estate of Stacy Gonzalez
1226 Mountain Ash Way
New Port Richey, FL 34655

Robert Gonzalez
1226 Mountain Ash Way
New Port Richey, FL 34655

Re:    Project: HART—3rd floor Ybor Renovations
       Contractor/Principal: Mid-State Contractors
       Bond no.: 1001054404
       HART Project no. F02000-002018
       HART Contract no. VC-000520

Dear Mr. Gonzalez,

This law firm has been retained to represent American Contractors Indemnity Company ("ACIC") with regard to the above-referenced bond and project. As are aware, ACIC issued bond 1001054404 on behalf of Midstate Contractors, Inc. for the project generally known as the 3rd Floor Ybor Renovations for the Hillsborough Area Regional Transit Authority (HART). After issuing the bond, ACIC received two payment bond claims from Carrier and from Shore Commerical Services. As more particularly explained below, after MidState Contractors failed to indemnify ACIC, ACIC paid the claims totaling $136,360.00.

On October 13, 2015, you executed a General Indemnity Agreement ("GIA" and enclosed herewith) as inducement for ACIC to issue the above-referenced Payment Bond. In reliance upon your promise to indemnify and save ACIC harmless from any claims which might be made against the bonds, the bond was issued by ACIC.

EXHIBIT
3

Specifically, you agreed to:

**Indemnify, keep indemnified, reimburse and save and hold the Surety harmless from and against any and all demands, liabilities, losses, costs, damages, attorneys' fees and expenses . . .**

In addition, you both further agreed to:

**Deposit with the Surety money, securities or other collateral in any amount, value, form, and source as may be designated by and acceptable to the Surety in its sole and absolute discretion.**

ACIC has incurred and will continue to incur losses, costs, and expenses, including attorneys' fees and consultant fees, on the above-referenced Bond as a result of Midstate Contractor's default in paying its subcontractors and suppliers. Under the Indemnity Agreement, you signed in your individual capacity and are therefore jointly and severally liable for ACIC's loses.

ACIC has already paid no less than $136,360.00 in connection with the resolution of claims on the above-referenced Project ($42,104.32 to Shore Commercial Services and $94,255.68 to Carrier), plus an additional amount of no less than $2,000.00 in claim management fees, attorneys' fees and expenses.

In light of these circumstances, ACIC hereby demands that you, as an individual, and Midstate Contractors, as corporate indemnitor, immediately deposit the sum of $138,360.00 in cash, or other property acceptable to ACIC as collateral security, with ACIC pursuant to your indemnity obligations under the Indemnity Agreement. And although this is a demand for indemnification and collateral security regarding all the above-referenced matters, it may be necessary to amend this demand as losses in connection with the issuance of the above-referenced bonds continue. One purpose of the collateral security provision is to protect ACIC from exposure to potential claims. As described hereinabove, ACIC has significant damages exposure in connection with these matters

Please be advised that unless you and the other indemnitors have provided collateral security as provided for pursuant to the terms of the Indemnity Agreement within fourteen (14) days from the date of this letter, ACIC shall file suit and seek specific performance of the collateral security provision of the Indemnity Agreement.

Very truly yours,
**THOMPSON & SLAGLE, LLC**

Joseph H. Wolenski

JHW/jhw